## ORTIZ *v.* PABÓN.

### APPEAL from the District Court of Mayagüez.

No. 33.—Decided May 5, 1904.

WILL—EXECUTION OF.—In cases in which the testator is in imminent danger of death, the will may be executed before five competent witnesses without the necessity of the intervention of a notary.

ID.—A will having been executed before five witnesses owing to the fact that the testator is in imminent danger of death, if the deliberate purpose of the testator to execute his last will and testament appears manifest, and the same took place in a single act and without interruption, the witnesses having heard the contents of the will from the lips of the testator, the same should be held valid.

ID.—NULLITY OF WILLS—DIVISION OF INHERITANCE—RESERVABLE PROPERTY.—In an action involving the nullity of a will, questions relative to the division of the inheritance and to the reservable character of a part of the property, cannot be litigated.

COSTS.—Costs should be imposed upon the party who loses his case on all points.

EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de Mayagüez por Don Higinio y Doña Rosario Ortiz del Toro, contra Doña Tomasa Pabón, por sí y en representación de sus menores hijos, sobre nulidad de una cédula testamentaria; cuyo juicio pende ante Nos á virtud de recurso de casación, hoy de apelación, interpuesto por los demandantes contra la sentencia del expresado Tribunal, habiendo llevado la representación del Don Higinio, ante esta Corte Suprema, el Letrado Don José Ramón Freyre, y la de Doña Rosario el Letrado Don Manuel F. Rossy, sin que haya comparecido la parte recurrida.

*Resultando*: que la expresada sentencia, dictada en 31 de Marzo de 1902, copiada á la letra dice así:

*Sentencia.*—En la ciudad de Mayagüez, á treinta y uno de Marzo de 1902. Vistos en juicio oral y público los presentes autos declarativos seguidos ante este Tribunal, entre partes, de la una Don Higinio y Doña Rosario Ortiz del Toro, representados y defendidos por el Letrado Don José Ramón Freyre, como demandantes; y de la otra, Doña Tomasa Pabón, por sí y en representación de sus menores hijos, representada y defendida por el Letrado Don Juan Quintero, como demandados; sobre nulidad de la cédula testamentaria otorgada por Don Salomón Ortiz.

1. *Resultando*: que la parte actora que pretende la nulidad, funda su demanda en que Don Salomón Ortiz falleció casi repentinamente en 1 de Julio de 1901, á consecuencia de los ataques de apoplegía que venía padeciendo y que empezaron en el año de 1897, descomponiéndole su razón y quedando en completo estado de parálisis, abandonándose en todos sus negocios, siendo asistido en su enfermedad por el Dr. D. Pablo Hernández, que expidió certificación acerca de su estado, y que, después de la muerte, apareció una cédula testamentaria otorgada ante cinco testigos, Justo Cardosa, José Nieves Bobé Tomás Carlo y Don Vicente Arroyo, firmando el documento, á ruego del testador, Don José Ramón Quiñones, cuya cédula se protocoló en 14 de Septiembre de 1900, en la Notaría de Don Alfredo Arnaldo, promoviendo la viuda Doña Tomasa Pabón el juicio de testamentaría, interviniendo los bienes y nombrándosele depositaria; consignándose

STATEMENT OF THE CASE.

. This is an action brought in the District Court of Maya-
güez by Higinio and Rosario Ortiz del Toro against Tomasa
Pabón, in her own name and as the representative of her minor
children, with reference to the nullity of a testamentary dis-
position; which action is pending before us on appeal in cas-
sation, now ordinary appeal, taken by the plaintiffs from the
judgment of aforesaid court, Higinio being represented in
this Supreme Court by Attorney José Ramón Freyre, and
Rosario, by Attorney Manuel F. Rossy, the respondent having
failed to appear.

Aforesaid judgment, rendered March 31, 1902, reads as
follows:

"Judgment.—In the city of Mayagüez, March 31, 1902. An oral
and public hearing was had of this declaratory action brought in
this court by Higinio and Rosario Ortiz del Toro, represented by
Attorney José Ramón Freyre, as plaintiffs, against Tomasa Pabón,
in her own name, and on behalf of her minor children, represented by
Attorney Juan Quintero, as defendants, with reference to the nullity
of a testamentary disposition executed by Salomón Ortiz.


"The plaintiffs, who seek the nullity of said instrument, base their
action on the ground that Salomón Ortiz died suddenly on July 1,
1901, as a result of the attacks of apoplexy from which he had been
suffering, and which had begun in the year 1897, upsetting his rea-
son and leaving him in a state of total paralysis, which caused him
to neglect all his affairs. That during his illness he was attended by
Dr. Pablo Hernández, who issued a certificate regarding his condition,
and that, after his death, there appears a testamentary provision exe-
cuted before five witnesses, namely, Justo Cardosa, José Nieves Bobé,
Tomás Carlo and Vicente Arroyo, the document being signed at the
request of the testator by José Ramón Quiñones; that said testa-
mentary provision was recorded on September 14, 1900, at the nota-
rial office of Alfredo Arnaldo; that the widow of Tomasa Pabón in-
stituted testamentary proceedings, whereupon the estate was taken

el hecho de que Don Salomón Ortiz no practicó la testamentaria de su primera esposa ni entregó á los herederos la parte hereditaria de aquella procedencia, y que posteriormente contrajo segundas nupcias con Doña Tomasa Pabón, con la que ha procreado varios hijos; alegando, en cuanto á los fundamentos de derecho, que para ser válido un testamento ante cinco testigos se necesita que el testador se halle en peligro inminente de muerte; que el testador Ortiz no podía otorgar testamento por habérsele entorpecido sus facultades intelectuales y no estaba en cabal juicio; que con el testamento se han defraudado los bienes de los demandantes, y el testamento con fraude es nulo, y que el testador no podía disponer de los bienes que heredó de los hijos del primer matrimonio estando obligado á reservarlos en favor de los otros.

2.   *Resultando* : que conferido traslado á la parte demandada, lo evacuó solicitando se declarase sin lugar la demanda, con las costas al actor por no ser cierto que la herencia que á Don Salomón correspondió de sus hijos pertenezca sólo á los demandantes, porque la testamentaría de la primera esposa de Don Salomón se practicó cobrando todos los herederos su participación y debiéndosele sólo á Don Higinio quince pesos; que sí es verdad que Don Salomón sufrió una enfermedad, á pesár de ella gozaba de su cabal juicio y administraba sus bienes por cuenta propia, otorgándose la cédula con las formalidades legales, y que si la demandada se encuentra en posesión de los bienes es por habérsele nombrado administradora en la junta celebrada, para la que fué citado el Letrado de los demandantes.

3.   *Resultando* : que convocadas las partes á comparecencia para proponer pruebas, formularon toda la que les interesó, que fué admitida, trayéndose certificaciones de varios Notarios, de no existir archivada la testamentaría de Doña Eduvigis del Toro ni otorgado cesión de derechos y acciones por los herederos de ésta; certificación folio 49 de que siempre figuró como contribuyente Don Salomón Ortiz por una finca rústica en el barrio de Pedernales de Cabo-Rojo; certificación fólio 51 sobre el nombramiento de Administradora de los bienes á favor de Doña Tomasa Pabón en la Junta para que fué citado el Letrado de los demandantes, certificación fólio 52, que comprende la cédula testamentaria de Don Salomón Ortiz y diligencias sobre aprobación y protocolación de ellas y que en el acto del juicio

charge of, she being appointed depositary. The fact was mentioned that Salomón Ortiz had not instituted testamentary proceedings in the matter of his first wife's estate, nor delivered to the heirs the hereditary portion derived therefrom; that he subsequently contracted a second marriage with Tomasa Pabón by whom he had several children. As to grounds of law, they allege that a testament made in the presence of five witnesses, to be valid, requires that the testator should be in imminent danger of death; that the testator Ortiz could not execute a testament because his mental faculties were disturbed and he was not in his right mind; that by the testament the plaintiffs have been defrauded of their property, and a testament made fraudulently is null and void; and that the testator could not dispose of the property inherited by him from the children had by his first marriage, he being obliged to set aside the same for the benefit of the others.

"Notice of the complaint was served upon the defendant, who answered praying that the same be dismissed, with costs against the plaintiffs, because it was not true that the inheritance Salomón Ortiz had received from his children belonged exclusively to the plaintiffs, inasmuch as upon the testamentary proceedings of Salomón's first wife, all the heirs were assigned their portion, there remaining a balance of only fifteen *pesos* in favor of Higinio; that although it is true that Salomón Ortiz had been suffering from illness, nothwithstanding this he enjoyed his full mental powers, and managed his own affairs, the testamentary disposition having been executed with due legal formalities; and if the defendant is in possession of the property it is because she had been appointed administratrix at the meeting held, and for which the attorney of the plaintiffs had been cited.

"The parties being summoned to appear for the proffer of evidence, they submitted such as was deemed convenient, which was admitted. Certificates from several notaries were presented, to the effect that the record of the testamentary proceedings of Eduvigis del Toro's estate was not found on file, nor had any assignment of rights and actions been executed by her heirs; a certificate, on folio 49, setting forth that Salomón Ortiz had always appeared as a taxpayer upon a rural estate in *barrio* 'Pedernales,' of Cabo Rojo; a certificate, on folio 51, referring to the appointment of Tomasa Pabón, as administratrix of the estate, at the meeting to which the attorney for the plaintiffs had been invited; a certificate, on folio 52, comprising the testamentary disposition of Salomón Ortiz, and proceedings in con-

oral declararon los testigos presentados por las partes sobre los extremos propuestos por ellas, votándose en público la sentencia en el día y hora señalado.

4. *Resultando*: que en la sustanciación de estos autos se han observado las prescripciones legales. Siendo Ponente el Sr. Juez Presidente, Don Arturo Aponte y Rodríguez.

1. *Considerando*: que cuando el testador se hallare en peligro inminente de muerte, puede otorgarse el testamento ante cinco testigos idóneos, sin necesidad de Notario, según el artículo 700 del Código Civil, y de las actuaciones se desprende que Don Salomón Ortiz, por la enfermedad que padecía, se encontraba en peligro de muerte por no demostrarse lo contrario.

2. *Considerando*: que el estado del testador, que se alega por la parte demandante como consecuencia de la enfermedad que venia padeciendo y que le habia entorpecido sus facultades intelectuales, no se demuestra en forma ni manera alguna, pues sólo se arguye que el facultativo que le asistió habia certificado sobre aquel estado, y ese mismo facultativo en el acto del juicio oral se limita á expresar que en una sola ocasión asistió al Sr. Ortiz, que sufrió un ataque apoplético en el año de 1894, dando las prescripciones necesarias, sin poder asegurar que Don Salomón quedaría perturbado de sus facultades mentales, pero que otros que han sufrido iguales ataques, y vivido después algunos años, pueden quedar en su sano juicio por haberlo comprobado en la práctica.

3. *Considerando*: que en el otorgamiento del testamento concurrieron los testigos exigidos por la Ley, con las cualidades que la misma establece, por lo que el Tribunal declaró testamento lo que de esas declaraciones resultara; y si bien en el acto del juicio esos mismos testigos incurrieron en pequeñas contradicciones, no fueron sustanciales sobre el propósito deliberado del testador de hacer su última disposición, de pasar en un solo acto sin interrupción y oirlo todo de boca del testador, único caso en que podía apreciarse la ineficacia del testamento; y en cuanto á la vecindad de los testigos, consta de las diligencias de aprobación que eran vecinos de Cabo-Rojo, sin que la parte demandante tratara de justificar lo contrario.

4. *Considerando*: que las demás alegaciones de la parte actora sobre división de la herencia de la primera consorte de Don Salomón y entrega de la parte correspondiente a sus hijos y en cuanto el carác-

nection with the approval and record thereof, and attesting that at the oral hearing, the witnesses called by the parties had testified upon the matters proposed by them, the judgment having been voted in public on the day and at the hour set therefor.

"In the conduct of these proceedings all the legal formalities have been observed.

"Presiding Judge Arturo Aponte Rodríguez prepared the opinion of the court.

"When the testator is in imminent danger of death, the will may be executed before five competent witnesses without the necessity of a notary, according to article 700 of the Civil Code, and from the record it appears that Salomón Ortiz, by reason of the illness he was suffering from, was in danger of death, the contrary not having been proven.

"The condition of the testator, alleged by the plaintiff as a result of the illness from which he was suffering, and which had disturbed his intellectual faculties, is by no means established, the only argument advanced being that the physician who had attended him had certified as to the aforesaid condition, and the same physician, during the oral hearing, confines himself to stating that only on one occasion he had attended Ortiz, who had an apoplectic attack in the year 1894, when he had made out the necessary prescriptions, without his being in a position to assert positively that said Ortiz's intellectual faculties had been affected thereby; but that others who had been similarly afflicted, and lived afterwards many years, might continue with a sound mind, as has been shown by experience.

"In the execution of the will the witnesses required by law, and possessing the qualifications thereby established, were present, for which reason the court had declared the result of their testimony to be a will; and although during the trial the same witnesses had fallen into slight contradictions, these were not material as regards the deliberate purpose of the testator to execute his last will, the execution thereof in a single act without interruption, and the hearing of all its dispositions from the lips of the testator, this being the only case in which the invalidity of the will could be considered; and as to the residence of the witnesses it appears from the proceedings had for their approval that they were residents of Cabo Rojo, the party plaintiff failing to establish the contrary.

"As to the other allegations of the party plaintiff, regarding the partition of the inheritance of Salomón's first wife and the delivery of the portion belonging to his children, and the reservable character

ter de reservables de algunos de los bienes de esa herencia, no son de influencia alguna para la validez ó no del testamento y sólo objeto de reclamaciones por separado y en el correspondiente juicio.

5. *Considerando* : que las costas se impondrán siempre á la parte cuyas pretensiones se desestimen totalmente.

Vistos los artículos 700 y demas de aplicación del Código Civil y la Orden General 118, série de 1899.

*Fallamos* : que debemos declarar y declaramos sin lugar la presente demanda, absolviendo de ella á la parte demandada, con las costas á cargo de los demandantes. Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.— Arturo Aponte.—Luis Méndez Vaz. R. Roura.

*Resultando* : que contra esta sentencia interpuso recurso de casación la representación de Don Higinio y Doña Rosario Ortiz, el que les fué admitido ; y elevados los autos á esta Corte Suprema, prévia citación y emplazamiento de las partes, se tramitó dicho recurso como de apelación, á virtud de lo dispuesto por la Ley de la Asamblea Legislativa de 12 de Abril del año próximo pasado, señalándose dia para la vista, que tuvo lugar con asistencia del Letrado del apelante Don Higino Ortiz, sin que asistiera á ese acto la otra apelante, ni se personara ante esta Corte la parte recurrida.

Abogados de los apelantes : *Sres. Freyre* y *Rossy (Manuel F.).*

La parte apelada no compareció.

of some of the property appertaining to said inheritance, these do not in any manner affect the validity of the will, and can only be the subject of separate claims to be prosecuted at the proper hearing.

"Costs shall always be paid by the litigant who loses his case on all points.

"In view of article 700 and others of the Civil Code and General Order 118, series of 1899, applicable to the case, we adjudge, that we should declare and do declare that the present complaint does not lie, and release therefrom the party defendant, with costs against the plaintiffs. Thus, by this our judgment, finally rendered, do we pronounce, order and sign.—Arturo Aponte, Luis Méndez Vaz, R. Roura."

From this judgment the representative of Higinio and Rosario Ortiz took an appeal in cassation, which was allowed. The record having been forwarded to the Supreme Court, the parties were duly cited to appear, and the case was dealt with as an ordinary appeal, pursuant to the provisions of the act of the Legislative Assembly, approved April 12 of last year, the appellant Higinio being present, the other appellant, as also the respondent, failing to appear before this court.

*Messrs. Freyre* and *Rossy (Manuel F.)*, for appellants.

The respondent did not appear.

MR. JUSTICE SULZBACHER, after making the above statement of the facts, delivered the opinion of the court.

The findings of fact and conclusions of law of the judgment appealed from are accepted.

We adjudge that we should affirm and do affirm the judgment rendered by the District Court of Mayagüez, March 31, 1902, with costs of the appeal against the appellants. The record is ordered to be returned to the aforesaid court with the proper certificate.

Chief Justice Quiñones and Justices Hernández, Figueras and MacLeary concurred.